MARY POPOVICH, DEFENDANT-PETITIONER, v. ATLANTIC PRODUCTS CORPORATION, PROSECUTOR.

Submitted October 1, 1940—Decided January 23, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the prosecutor, *Samuel D. Lenox.*

For the defendant-petitioner, *John Oswald.*

The opinion of the court was delivered by

PARKER, J. This is a workmen's compensation case. With regard to the basic facts there is no disagreement in the proofs

or, as we read them, in the briefs; and there was no oral argument. The factual situation at the time of the injury to the petitioner is fully set out in the determination of the Court of Common Pleas and fully supported by the evidence. The petitioner, at the time of the injury, was employed, and for some years had been employed, by the respondent corporation, which occupied for its manufacturing purposes the second and third floors of a factory building of considerable size. Other parts of the building, particularly the first floor, were occupied by other business concerns. There was a main front entrance facing a street and from this a permanent stairway leading to the upper floors. Back of the building was a large yard in which there was a lunch room owned and operated by outside parties and used exclusively by persons employed by the different concerns in the building. To reach this the most convenient way was a rather narrow stairway leading from the second floor down to the back of the building; and at the top of this stairway, and separating the first floor from the second floor, was a trap door. The employes of the respondent corporation, in order to reach the lunch room during the lunch hour, had always been accustomed to open this trap door and go down the stairs from the second floor to the first floor and out at the back of the building. This, according to the evidence, was a long established custom, well known to the agents of the corporate employer.

The evidence further shows that at the time of the accident, and for a long time previously, the employes of the respondent corporation had had a ping pong table on the second floor which they were accustomed to set up and use to play ping pong during the lunch hour. It is in evidence that the table had been in the shop four or five years, that it was known to the "bosses," that there were tournaments, and that the "bosses" had participated, and that the use of the ping pong table was recognized and without any objection by them. In this state of affairs on the day of the accident, the petitioner went down the back stairs to the lunch room, and returning from lunch when it was time to resume work, she ascended these same stairs but the trap door was down and she had to push it up in order to climb through the opening. As she

did so a fellow employe, who was engaged in a game of ping pong and was retrieving a ball (so reads the brief for the prosecutor) ran across the trap door which was being pushed up and caused it to go downward and strike the petitioner on the head inflicting the injury for which recovery was sought. The bureau found, as we have said, that petitioner had sustained an injury arising out of and in the course of employment, and the first point made in the brief for prosecutor is that this finding was erroneous in law. We have no hesitation in saying that in our opinion the finding was entirely correct. At the time of the injury the petitioner was actually engaged in entering the premises of the employer for the purpose of resuming her work at the appointed time. If the door had been an ordinary door instead of a trap door and she had been in the act of opening it for the purpose of passing through to enter the employer's work room on the other side of it and some one inside, thinking it had accidentally opened, had slammed it in her face and broken her nose, we think there would have been no doubt whatever of the applicability of the Compensation act. The only distinction in the present case seems to be that instead of going through an ordinary swing door, she was engaged in going through a trap door, and, as a matter of fact, had partially entered the employer's premises on the second floor. The door was slammed upon her and the injury, instead of being an injury to the nose as in the suggested case, was an injury to the skull: so that the distinction is without a difference.

As we understand our cases, the general rule is that where the employe is simply on his way to work and has not entered the employer's premises, or has undertaken to enter those premises by an unauthorized route, he is not yet in the course of his employment; and, conversely, where the employe has left the employer's premises, the course of employment has ceased for the time being; but where the employe is actually in the process of entering the premises at a proper time and in a proper manner in connection with his work and an accident occurs under those circumstances, it arises in the course of the employment. The remaining question then is, whether such accident has arisen out of the employ-

ment. We consider that it did so arise. The ping pong table, as already stated, was something set up with the knowledge and consent, not to say encouragement and participation, of the authorities of the respondent corporation. The trap door was a recognized means of exit and entrance for employes, and subject to the dangers usually incident to trap doors. The situation was further complicated by the proximity of the ping pong table and its use by employes and others during the lunch hour. In the language of the late Mr. Justice Swayze in the oft-cited case of *Terlecki* v. *Strauss*, 85 *N. J. L.* 454, 455; affirmed in 86 *Id.* 708, "the employment was one of the necessary antecedents to the accident." In *Grady* v. *Nevins Co.*, 120 *Id.* 351, 353, the court said: "The character or quality of the accident as conveyed by the words 'out of' involves * * * the idea that the accident is in some sense due to the employment. It must be an accident resulting from a risk reasonably incident to the employment" (citing cases). We consider that the circumstances of the present case meet this test. Recurring to the analogy of an employe starting to open an ordinary door and having it slammed in her face by some person inside, we see no essential difference. In both cases there would be the liability of a door suddenly closed against an entrant, and in both cases the possibility of an accident by such closing would be one reasonably to be contemplated by the employer. The ping pong element merely emphasized the danger.

Our conclusion therefore is that the Bureau and the Pleas were right in finding that the accident arose out of and in the course of the employment, and as regards the *quantum* of recovery, our examination of the evidence and briefs leads to the further conclusion that the percentage of disability was correctly appraised, and that the periods of permanent and total disability as found are amply supported by the evidence.

The writ of *certiorari* will therefore be dismissed, with costs.